UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RUTH HARTZELL,                      )
                                    )
            Plaintiff,              )
                                    )
      vs.                           )      Case No. 4:20 CV 1299 ACL
                                    )
KILOLO KIJAKAZI,                    )
Commissioner of Social Security     )
Administration,                     )
                                    )
            Defendant.              )

**MEMORANDUM**

Plaintiff Ruth Hartzell brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of the Social Security Administration Commissioner's denial of her application for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Hartzell's severe impairments,

she was not disabled as she had the residual functional capacity ("RFC") to perform work

existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with

consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is

presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I.  Procedural History

Hartzell filed her application for benefits on October 10, 2018.   (Tr. 161-62.)   She

claimed she became unable to work on June 22, 2018, due to rheumatoid arthritis, fibromyalgia,

generalized anxiety disorder, Sjogren's syndrome, migraines, and attention deficit disorder ("ADD").   (Tr. 68.)   Hartzell was 51 years of age at her alleged onset of disability date.   Her application was denied initially.   (Tr. 84-90.)   Hartzell's claim was denied by an ALJ on December 26, 2019.   (Tr. 12-22.)   On July 24, 2020, the Appeals Council denied Hartzell's claim for review.   (Tr. 1-4.)   Thus, the decision of the ALJ stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Hartzell argues that the decision of the ALJ "failed to properly articulate a rationale for finding plaintiff's testimony to be inconsistent; and failed to articulate a legally sufficient rationale for its evaluation of the medical evidence of record; and as a result, fails under the standards contained in *Singh* and *Lauer* that requires some medical evidence to support findings of residual functional capacity."   (Doc. 12 at 21.)   She further argues that, as a result of these alleged errors, "the hypothetical question to the vocational witness was flawed."   *Id.*

## II.  The ALJ's Determination

The ALJ first found that Hartzell met the insured status requirements of the Social Security Act through September 30, 2021.   (Tr. 14.)   She stated that Hartzell has not engaged in substantial gainful activity since her alleged onset date.   *Id.*   In addition, the ALJ concluded that Hartzell had the following severe impairments: rheumatoid arthritis, fibromyalgia, trochanteric bursitis, and migraine headaches.   *Id.*   The ALJ found that Hartzell did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.   (Tr. 16.)

As to Hartzell's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the
> claimant has the residual functional capacity to perform light work

as defined in 20 CFR 404.1567(b) except she should never be
required to climb a ladder, rope or scaffold.   She can occasionally
climb ramps and stairs, balance, stoop, kneel, crouch and crawl.
She can frequently reach, handle and finger with her bilateral
upper extremities.   She can tolerate no more than occasional
exposure to weather, humidity, wetness, dust, odors, fumes,
pulmonary irritants, temperature extremes and vibration.   She
must avoid hazards, such as unprotected heights and moving
mechanical parts.   Her working environment should have no more
than moderate noise levels.   She can interact with coworkers,
supervisors, and the public occasionally.   In addition, she can
perform simple, routine tasks in an environment with few changes
in the job setting and duties.

*Id.*

The ALJ found that Hartzell was unable to perform her past relevant work, but was

capable of performing other work existing in substantial numbers in the national economy.   (Tr.

20-21.)   The ALJ therefore concluded that Hartzell was not under a disability, as defined in the

Social Security Act, from June 22, 2018, through the date of the decision.   (Tr. 22.)

The ALJ's final decision reads as follows:

Based on the application for a period of disability and disability
insurance benefits protectively filed on October 10, 2018, the
claimant is not disabled as defined in sections 216(i) and 223(d) of
the Social Security Act.

*Id.*

## III.   Applicable Law

### III.A.   Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial

evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389,

401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less

than a preponderance of the evidence, but enough that a reasonable person would find it adequate

to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This

"substantial evidence test," however, is "more than a mere search of the record for evidence

supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir.

2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a

whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations

omitted).

To determine whether the Commissioner's decision is supported by substantial evidence

on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal

citations omitted). The Court must also consider any evidence which fairly detracts from the

Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050

(8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the

evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

**III.B.  Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in

substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."   *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. § 416.921(b).   These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.   *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).   "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work."   *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.   If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the

presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."   *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is

not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.   The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.   *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).   If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent."   20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).   The Commissioner must then rate the degree of functional loss resulting from the impairments.   *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3).   Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities.   *See id.*   Next, the Commissioner must determine the severity of the impairment based on those ratings.   *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c).   If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder.   *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).   This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders.   *See id.*   If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment.   *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV.   Discussion

Hartzell argues that the ALJ erred in assessing her subjective complaints; in evaluating the medical evidence and determining her RFC; and in formulating the hypothetical question posed to the vocational expert.   The undersigned will discuss these claims in turn.

### 1.   Subjective Complaints

The ALJ summarized Hartzell's testimony regarding her subjective complaints as follows, in relevant part:

> The claimant testified that she is unable to work due to generalized body pain caused by fibromyalgia, joint pain and stiffness due to rheumatoid arthritis (RA), migraine headaches and anxiety.   She stated that she has required infusions for her RA and her migraine headaches occur up to three times per week.   She is particularly sensitive to light and sound during a headache.   She requires a dark room during these headaches, which can last up to twenty-four hours and are often accompanied by nausea and vomiting.   She states that her RA causes stiffness, making it difficult to remain in the same position for very long.   She also has problems keeping her grip on items and the cramping in her fingers and hands makes it difficult to type on a keyboard.   In addition to her physical impairments, she stated that her anxiety causes panic attacks, which make it challenging to go places, and she has to prepare for a couple days to be outside of her home.   She then has to recover for two to three days afterward.   She states that she often wakes up crying from a sound sleep due to her joint pains, which have not been adequately alleviated with medication treatment.

(Tr. 17.)

The ALJ found that Hartzell's impairments could reasonably be expected to cause some symptoms; however her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the evidence in the record for the reasons explained in this decision." *Id.*

Part of the RFC determination includes an assessment of a claimant's subjective complaints.   Using the *Polaski* factors, "[s]ubjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.

1984); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (noting *Polaski* factors must be considered before discounting subjective complaints).   The *Polaski* factors include (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions.   *Polaski*, 739 F.2d at 1322; *see also* 20 C.F.R. § 416.929(c)(3).

Hartzell argues that the ALJ failed to properly discuss her subjective complaints, resulting in an RFC determination not supported by substantial evidence.   Specifically, she claims that the ALJ did not consider all of her daily activities as set out in her Function Report, did not consider the medications she had been prescribed, and did not consider the side effects of her prescribed medications.

The Court finds that the ALJ adequately considered the *Polaski* factors.   First, the ALJ summarized the Function Report completed by Hartzell on February 10, 2019.   (Tr. 17, 205-12.) The ALJ stated that Hartzell reported that she lived in a house with her family, spent her days caring for her teenage children and pets, watched television, talked on the telephone, and tried to perform some chores.   (Tr. 17, 206.)   The ALJ noted that Hartzell did not require any reminders regarding personal grooming or taking medication.   (Tr. 17, 207.)   Additionally, she noted that Hartzell prepared meals weekly, was able to drive, and went out alone to shop for her needs. (Tr. 17, 207-08.)   The ALJ found that this level of "independent function is inconsistent with a finding of disability."   (Tr. 17.)

Hartzell argues that the ability to perform sporadic light activity does not demonstrate she is able to perform work activity.   She further argues that the ALJ's summary of her daily activities is insufficient, as the ALJ did not discuss statements in the Function Report that are supportive of Hartzell's allegations of disability.

Hartzell is correct that a person's ability to engage in chores or hobbies does not demonstrate an ability to work.   *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000).   It is proper, however, for an ALJ to consider a claimant's personal activities for purposes of assessing the credibility of her claims of incapacity.   *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013). This is what the ALJ did here in finding that Hartzell's independent activities belied her subjective complaints of disabling symptoms.   "Credibility determinations are the province of the ALJ."   *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018).[1]

Although the ALJ did not discuss every statement in Hartzell's Function Report, it is well-settled that the ALJ need not discuss all of the evidence found in the record.   *See, e.g., Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (reiterating that the ALJ need not discuss every piece of evidence contained in the record).   Moreover, the ALJ did acknowledge Hartzell's statements that are supportive of her claim when she summarized Hartzell's testimony regarding her limitations.   The ALJ found that, despite these statements of limitations, Hartzell's testimony reveals that she is able to live independently.   Thus, the ALJ did not err in evaluating Hartzell's daily activities.

Hartzell next argues that the ALJ did not adequately discuss her prescribed medications or the side effects she experiences from these medications.   The ALJ, however, specifically addressed Hartzell's prescribed medications and their effectiveness in her summary of the medical evidence.   The ALJ stated that, August 2018 treatment notes indicate that Hartzell's rheumatoid arthritis medication "was effective and she denied any side effects."   (Tr. 18, 258.) She noted that Hartzell requested "larger doses of increasingly stronger medications" for when

---

[1]Although SSR 16-3p, published March 28, 2016, eliminates the use of the term "credibility," expressly rescinding SSR 96-7p, Eighth Circuit precedent continues to employ the term to describe an assessment of whether the evidence supports a claimant's subjective complaints.

her pain was severe on a November 2018 visit.   (Tr. 18, 253.)   Also in November 2018, Hartzell was "noted to be undergoing medication infusions and tolerating them well."   (Tr. 18, 299.)   Finally, the ALJ noted that Hartzell reported to a consultative examiner in April 2019 that her injections and medications had been helpful for her fibromyalgia, joint pains, and migraine headaches.   (Tr. 18, 387.)

Although Hartzell argues in her Brief that she experienced side effects from her medications, there is no indication in the record that she reported any side effects to her physicians.   That said, some medications were discontinued due to lack of effectiveness while others reportedly controlled her symptoms.   Overall, the medical records reveal that Hartzell's medications were effective at controlling her symptoms.   (Tr. 258, 268, 299, 304, 305.)   *See Bernard v. Colvin*, 774 F.3d 482, 488 (8th Cir. 2014) (an impairment that is "controllable or amenable to treatment [does] not support a finding of total disability").   Thus, the ALJ did not err in discussing Hartzell's medications.

Next, the ALJ discussed the objective medical evidence and found it was not entirely supportive of Hartzell's subjective complaints.   Treatment notes dated August 2018 indicate that Hartzell had suffered from rheumatoid arthritis for nine years, and that she experienced "fairly mild symptoms," including joint stiffness.   (Tr. 18, 258.)   Her joint symptoms were described as "stable and non-progressive."   *Id.*   She had been taking medication for attention deficit disorder for years, which was "very effective."   (Tr. 258)   Hartzell also complained of migraine headaches beginning two months prior, which improved with over-the-counter medication.   *Id.* Additionally, an MRI of her SI joints showed no evidence of inflammation.   (Tr. 18, 304.)   In November 2018, it was again noted that Hartzell's joint symptoms were mild.   (Tr. 18, 253.) Hartzell declined treatment for her fibromyalgia in December 2018.   (Tr. 18, 462.)   In April

2019, consultative examiner Raymond Leung, M.D., found that Hartzell's gait was normal, she was able to walk fifty feet unassisted, no muscle atrophy was present, she had no difficulties getting on and off the examination table, her fund of knowledge was normal, and her memory appeared intact.   (Tr. 18, 388-89.)   Dr. Leung noted a positive straight leg-raising test at seventy degrees, and some diffuse tenderness and decreased range of motion in her lumbar spine. *Id.*   Hartzell complained of an acute episode of low back pain in October 2019.   (Tr. 18, 415.) She underwent an MRI, which was normal.   *Id.*   Hartzell's physical examination was normal, other than some tenderness to palpation of the shoulder, hands, and hips.   (Tr. 18, 460.)   With regard to Hartzell's mental impairments, the ALJ noted that Hartzell's mental status examinations were routinely unremarkable.   (Tr. 15, 255, 260, 266, 270, 417, 421, 424.)

Although an ALJ may not disregard a claimant's complaints based solely on objective medical evidence, it is one factor the ALJ may consider.   *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (citing *Tennant v. Apfel*, 224 F.3d 869, 871 (8th Cir. 2000)).   The ALJ properly considered the lack of objective evidence of abnormalities when assessing Hartzell's subjective complaints.

In sum, the ALJ properly considered the *Polaski* factors, including Hartzell's daily activities, the objective findings on examination, and the effective use of medication, in assessing Hartzell's subjective complaints.

**2. RFC**

A claimant's RFC is the most she can do despite her physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).   It is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record.   20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946.   Some medical evidence must support the

ALJ's RFC finding, but there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician.   *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).   "The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion."   *Wallenbrock v. Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013)).   Additionally, when determining a claimant's RFC, the ALJ must evaluate the credibility of the claimant's subjective complaints. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).

The ALJ determined that Hartzell had the physical RFC to perform light work, with the following additional limitations:   she should never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can frequently reach, handle, and finger with her bilateral upper extremities; can tolerate no more than occasional exposure to weather, humidity, wetness, dust, odors, fumes, pulmonary irritants, temperature extremes, and vibration; must avoid hazards including unprotected heights and moving mechanical parts; and her work environment should have no more than moderate noise levels.   (Tr. 16.)   Additionally, the ALJ found Hartzell had the mental RFC to occasionally interact with coworkers, supervisors, and the public; and could perform simple, routine tasks in an environment with few changes in the job setting and duties.   *Id.*

Hartzell argues that the ALJ erred in disregarding the opinion of consultative psychologist Thomas Spencer, Psy.D., and relying on medical conjecture when determining her mental RFC.   Hartzell presented to Dr. Spencer for her examination on May 1, 2019, at which

time she reported anxiety, depression, and possible high-functioning autism.   (Tr. 394.)   When asked to elaborate on her anxiety, Hartzell stated she dislikes the unknown, struggles with deadlines, and is easily overwhelmed.   *Id.*   She indicated that she experiences "panic-like episodes" during which she breaks down in tears, yells, and wants to be let alone.   *Id.*   Hartzell reported that her son had died of a heroin overdose five months prior, which exacerbated her psychiatric symptoms.   *Id.*   She indicated that she is moody and irritable, and snaps at the family members in her home.   (Tr. 395.)   Hartzell reported that she isolates to her bedroom where she can watch videos on her phone, but she tries to make dinner most nights, brushes her teeth, gets her kids up and off to school most days, and sometimes runs errands alone.   *Id.*   On examination, Dr. Spencer noted Hartzell had no impairment in grooming or hygiene, her eye contact was fair to intermittent, her speech was soft in tone, she was not in any physical distress, she was cooperative and seemed to be a reliable historian, her insight and judgment appeared intact, her affect was bland and she broke down in tears a couple of times, she described her mood as "a little anxious," she denied thoughts of suicide or homicide, she was alert and oriented, her flow of thought was intact, her intelligence was described as average, no memory impairment was observed, and she was able to complete simple arithmetic.   (Tr. 396.)   Dr. Spencer diagnosed Hartzell with generalized anxiety disorder and persistent depressive disorder, and assessed a GAF score[2] of 55 to 60.   *Id.*   Dr. Spencer expressed the opinion that Hartzell

---

[2]Global assessment of functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (4th ed. rev. 2000) ("DSM").   GAF scores of 51 to 60 represent "moderate," and scores of 61 to 70 represent "mild" symptoms of impairment.   *Id.* at 32.   The newest edition of the DSM—the fifth edition published in 2013—"dropped the GAF scale as a diagnostic tool because it suffers from a conceptual lack of clarity and 'questionable psychometrics in routine practice.'"   *Mosier v. Colvin*, 2014 WL 4722288 at *3 (W.D. Mo. Sept. 23, 2014) (quoting American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 16 (5th ed. rev. 2013)).   "GAF

has moderate to marked impairment in her ability to learn, recall, and use information; consistently stay on task; and relate to and work with others on a consistent basis.   *Id.*   He found Hartzell can manage her benefits without assistance.   *Id.*

The ALJ summarized Dr. Spencer's findings and opinions.   (Tr. 20.)   She acknowledged that GAF scores are of little use in disability determinations, yet pointed out that Dr. Spencer's assigned score of 55 to 60 is indicative of only mild to moderate limitations in work-related mental functions.   *Id.*   The ALJ stated that Dr. Spencer's opinion that Hartzell has moderate to marked limitations in the same areas is unpersuasive, as it is inconsistent with his GAF score, findings on examination, and the findings of other evaluators.   *Id.*

For claims like Hartzell's, filed on or after March 27, 2017, an ALJ evaluates medical opinions pursuant to 20 C.F.R. § 404.1520c.   These new rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources."   20 C.F.R. § 404.1520c(a).   Rather, an ALJ is to consider the persuasiveness of any opinion or prior administrative medical finding using the same five factors: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c).   However, the rules make clear that supportability and consistency are the "most important factors," and therefore, an

---

scores have no direct correlation to the severity standard used by the Commissioner."   *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) (citing 65 Fed. Reg. 50746, 50764-65).

ALJ must explain how she considered these factors in the decision.   20 C.F.R. § 404.1520c(b)(2).   An ALJ may, but is not required to, explain how she considered the remaining factors. *Id.   See Brian O v. Comm'r of Soc. Sec.*, No. 1:19-CV-983-ATB, 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 404.1520c(a), (b)) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'"   (alterations omitted)).

Here, the ALJ properly evaluated Dr. Spencer's opinion in compliance with the new regulations.   She found Dr. Spencer's opinions were unpersuasive because they were inconsistent with his own findings on examination.   Specifically, Dr. Spencer assessed a GAF score reflecting only mild to moderate limitations, yet concluded that Hartzell had moderate to marked limitations in many functional areas.   On examination, Dr. Spencer found that Hartzell's affect was bland, and she broke down in tears a couple of times, but her mental status examination was otherwise normal.   Hartzell's insight and judgment were intact, she denied suicidal thoughts, she was alert and oriented, her flow of thought was intact, her intelligence was average, and no memory impairment was observed.   These findings on examination do not support the presence of marked limitations in areas such as the ability to learn and recall, or the ability to relate to and work with others.

The ALJ also explained that Dr. Spencer's opinions were inconsistent with the findings of other evaluators, "such as Dr. Dale" and the record as a whole.   (Tr. 20.)   Hartzell saw Malinda A. Dale, Ph.D., on March 6, 2019, for a self-requested evaluation to assess for high-functioning autism.   (Tr. 381.)   Hartzell reported that she is sensitive to sounds, odors, lights,

and textures; she is not an emotional person and often has a neutral or flat affect; and does not like to be touched.   *Id.*   She indicated that she is often restless, picks at her skin, and worries about her appearance before leaving the house.   *Id.*   Hartzell stated that she is able to maintain friendships from the past but not make new friendships.   *Id.*   On examination, Hartzell was dressed appropriately and groomed adequately; made intermittent eye contact; was alert and responsive to test questions; spoke coherently, without any noticeable irregularities; her affect was appropriate, and her mood was content; her thought processes were logical and coherent; her level of psychomotor activity was calm; and she was attentive to tasks.   (Tr. 382.)   Dr. Dale administered IQ testing, which revealed a Full-Scale IQ score of 114.   (Tr. 383.)   Dr. Dale indicated that Hartzell's IQ score classified her in the "high average" range of intelligence.   (Tr. 384.)   Dr. Dale also administered autism diagnostic testing, which revealed scores in the range for Autism Spectrum Disorder ("ASD") (her score was 7, and the threshold for ASD is a 7). (Tr. 385.)   In the area of social communication, Dr. Dale noted that Hartzell made intermittent eye contact but spoke with complex speech.   *Id.*   She was able to talk about events and areas of interest, but had trouble asking the evaluator about her interests and experiences.   *Id.*   Dr. Dale diagnosed Hartzell with generalized anxiety disorder; social anxiety disorder; ASD, level 1; and major depressive disorder, single episode, mild (exacerbated by grief).   (Tr. 386.)   She recommended continued outpatient therapy to address social and general anxiety and depressed mood, group counseling or social activities to improve her communication skills, occupational therapy for sensory issues, regular physical exercise to improve her mood, and ongoing medication monitoring.   *Id.*

The ALJ's statement that Dr. Spencer's opinions are inconsistent with the findings of Dr. Dale is supported by the record.   Dr. Dale noted few abnormalities on mental status

examination.    Hartzell was responsive to questions, she spoke coherently and with complex speech, her affect and mood were normal, and she was attentive.    Significantly, Dr. Dale found, based on IQ testing, that Hartzell's intelligence was in the "high average" range.    These findings are inconsistent with the presence of moderate to marked limitations in the ability to learn and recall, or the ability to work with others.

The ALJ also discussed the findings of Landy Maurer Wedlock, M.S.W., L.C.S.W. Hartzell presented to Ms. Wedlock for an ASD assessment on May 13, 2019, after two of her children were diagnosed with ASD.   (Tr. 399.)   Hartzell indicated that Dr. Dale had diagnosed her with ASD, but she did not believe the testing was thorough enough.    *Id.*   Hartzell reported that she lived with her husband and children, and she has a small close group of female friends. *Id.*   She earned an associate degree in Paralegal Studies and worked as a legal assistant from 1996 to 2000.   (Tr. 400.)   Her bosses were very happy with her work, but she did have some issues with arriving late on a regular basis.    *Id.*   She subsequently worked part-time on special projects, and then consulted and did IT work for her husband's business for ten years.    *Id.*   On examination, Hartzell presented "as an outgoing and cautious woman with many strengths." (Tr. 401.)   She was able to provide an example of what caused her to feel a particular emotion and loosely describe how it actually felt.    *Id.*   She had an understanding of typical social relationships and could speak fluently on topics that interested her, but struggled with responding to her conversational partner's interest.    *Id.*   Hartzell reported that she saw her several close friends regularly, and preferred to see them at her home.   (Tr. 402.)   She reported that her goals and dreams for the future involve spending extended periods of time in a resort in Jamaica.    *Id.* Ms. Wedlock diagnosed Hartzell with ASD Level 1 without language or intellectual impairment, but with qualitative impairments in reciprocal communication, intuition concerns, and some

difficulties communicating emotion.  *Id.*   She recommended that Hartzell continue counseling with a focus on reciprocal conversations and reading other peoples' emotions appropriately. (Tr. 403.)   She also recommended vocational rehabilitation for guidance with employment if this was of interest to her.  *Id.*

The ALJ stated that the deficiencies set out by Ms. Wedlock would not affect Hartzell's ability to engage in routine workplace communications.  (Tr. 19.)   She noted that a proficiency in the skills of reciprocal communication and communicating emotion was not required to perform simple unskilled work activity.  *Id.*   The ALJ indicated that, "out of an abundance of caution," she limited the social interaction in her mental RFC accordingly.  *Id.*

In addition to the evidence discussed above, the ALJ considered the opinions of the state agency medical consultants.   In May 2019, Martin Isenberg, Ph.D., expressed the opinion that Hartzell was moderately limited in her social functioning and ability to maintain concentration, persistence, and pace; and mildly limited in her ability to understand, remember, and apply information, and to adapt and manage herself.   (Tr. 20, 72-73.)   He found that Hartzell was capable of performing simple, repetitive tasks on a sustained basis.   (Tr. 73.)   The ALJ stated that Dr. Isenberg's opinions were "fairly persuasive," although she found Hartzell had only mild limitations in her social functioning.   (Tr. 20.)

The ALJ next discussed the opinion of state agency medical consultant Renu Debroy, M.D.   In May 2019, Dr. Debroy expressed the opinion that Hartzell was capable of performing light work, with additional restrictions of no climbing ladders, ropes, or scaffolds; occasional postural limitations; hazard precautions; and limited exposure to noise and vibration.   (Tr. 74-77.)   The ALJ found Dr. Debroy's opinions "fairly persuasive," although she added manipulative limitations due to Hartzell's hand complaints.   (Tr. 20.)

The undersigned finds that the ALJ's RFC determination is supported by substantial evidence in the record as a whole.   In her discretion, the ALJ made an RFC finding that did not precisely reflect any of the medical opinions of record.   *See Martise*, 641 F.3d at 927 (ALJ is not required to rely entirely on one particular physician's opinion or choose between opinions).

The ALJ's physical RFC is consistent with, and slightly more restrictive than, the opinion of the state agency physician.   It is also consistent with the findings on examination of Dr. Leung.   The ALJ's mental RFC is consistent with the findings on examination of Dr. Spencer, as well as the examination findings of Dr. Dale and Ms. Wedlock, and the opinion of Dr. Isenberg that Hartzell was capable of performing simple, repetitive tasks on a sustained basis. As discussed above, the ALJ properly evaluated Hartzell's subjective complaints of pain and limitations and found they were not entirely supported by the record.   Notably, Hartzell was able to live independently, take care of her children, run errands alone, and socialize with friends. The ALJ nonetheless credited Hartzell's allegations of limitations resulting from physical and mental impairments in imposing a significantly restricted RFC.   Hartzell points to other evidence in the record that is supportive of greater limitations, but she has failed to demonstrate that the ALJ's decision was outside the available "zone of choice."

The vocational expert testified that Hartzell could perform work existing in substantial numbers in the national economy, such as mail clerk, injection molding machine tender, and inspector/hand packager.   (Tr. 22.)   "Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Cox v. Astrue*, 495 F.3d 614, 620-21 (8th Cir. 2007) (citing *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)).   The hypothetical question the ALJ posed to the vocational expert was based on the ALJ's RFC determination.   As

such, the vocational expert's testimony constitutes substantial evidence that Hartzell is not disabled.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of March, 2022.